IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-01236-RM-SKC

RAYMOND E. CLARK,
BETTYJUNE CLARK, and
CHRYSTAL ANN MCCONNELL,

        Plaintiffs,

v.

HYATT HOTELS CORPORATION,
HYATT PLACE FRANCHISING, LLC,
NOBLE INVESTMENT GROUP, LLC,
NF II BOULDER OP CO, LLC,
HP BOULDER LLC,
INTERSTATE HOTELS & RESORTS, INC.,
NOBLE-INTERSTATE MANAGEMENT GROUP, LLC,
PEDERSEN DEVELOPMENT COMPANY, L.L.C.,
3001 PEARL, LLC,
SHORT ELLIOTT HENDRICKSON, INC.,
JAY LARSSON,
LARSSON DESIGN,
MILENDER WHITE CONSTRUCTION CO.,
GIVEN & ASSOCIATES, INC.,
DESIGN MECHANICAL INCORPORATED, and
MARXAIRE, INC.,

        Defendants.

---

## DISCOVERY ORDER RE: GUEST NAMES & CONTACT INFORMATION

---

      Before the Court is a discovery dispute involving Defendants Noble-Interstate

Management Group's and Hyatt Place Franchising's ("Defendants") production of

hotel guest names and contact information. The parties first raised this issue when

1

contacting my Chambers per my Civil Practice Standards. The Court ordered the applicable parties to submit a Joint Discovery Report detailing their positions and arguments on the issue. [Dkt. 234.] Those parties then submitted their Joint Discovery Dispute Report Re: Guests' Names and Contact Information. [Dkt. 238.] The Court next held a Discovery Hearing on the matters in the Joint Report, and also asked for counsels' view on four cases having potential implications on their dispute. [Dkt. 251, citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 368 n.20 (1978); *Brunner v. Holland Am. Line, Inc.*, No. C11-2118-RSM, 2013 WL 594288, at *2 (W.D. Wash. Feb. 15, 2013); *Nathaniel v. Am. Airlines*, No. Civil 2007/0033, 2008 WL 5046848, at *7 (D.V.I. Nov. 20, 2008); *Wallman v. Tower Air, Inc.*, 189 F.R.D. 566, 568-69 (N.D. Cal. 1999).]

The Court has now considered the oral arguments of counsel, the Joint Report, and applicable law. The Court issues this Discovery Order to resolve the discovery dispute.

## BACKGROUND

This putative class action involves Plaintiffs' individual and class claims for violation of Colorado's Premises Liability Act; negligence and vicarious liability; violation of the Colorado Consumer Protection Act; and medical monitoring.[1] The case stems from an alleged carbon monoxide poisoning incident that occurred over nine

---

[1] This Court issued multiple Recommendations to dismiss some of these claims in their entirety or as applied to certain Defendants. [Dkts. 255, 260, 261.] Objections to those Recommendations are pending with the presiding District Judge.

days at the Hyatt Place Boulder/Pearl Street Hotel, in Boulder, Colorado. Plaintiffs allege the Hotel's faulty boiler and ventilation system spread carbon monoxide (CO) throughout the Hotel without any warning to the guests, causing them to be poisoned and seriously injured.

These additional allegations are pertinent to this Discovery Order: Plaintiffs allege the Hotel was near capacity (it contains 150 rooms) due to a college football game. On November 11, 2018, the Clarks felt weak and "strangely short of breath" while working out in the Hotel's fitness center. On November 13, Mrs. Clark passed out in the lobby and Mr. Clark took her to the emergency room. Eventually, the Clarks bought a carbon monoxide alarm, which immediately began to sound after they plugged it in, signaling high levels of carbon monoxide. The Clarks went to the Hotel lobby to speak to the general manager while their carbon monoxide alarm continued to sound. Subsequent testing of the Clarks in an emergency room showed they had been exposed to dangerously high levels of carbon monoxide. The Boulder Fire Department evacuated the Hotel and firefighters spent three hours ventilating the building. Firefighter Johnson advised the Hotel's general manager to contact all guests who had been in the Hotel in the last three days to inform them that they may have been exposed to dangerous levels of carbon monoxide, and that they should be checked.

## ARGUMENTS

Plaintiffs contend the guests' names and contact information are relevant to their claims regardless of whether a class is certified, but they also claim this information is relevant to class certification and issues of numerosity, commonality, and typicality under Fed. R. Civ P. 23. According to Plaintiffs, the guests are fact witnesses likely to have information regarding their own symptoms and carbon monoxide exposure, which is relevant to Plaintiffs' exposure and spatial patterns which may help establish the defect that caused the carbon monoxide distribution. Other guests may have witnessed specific events, such as Mrs. Clark passing out in the lobby, may have heard the continuous sounding of the Clarks' personal carbon monoxide detector, and may have had their own discussions with managers and maintenance involving their own symptoms or related issues. They might also corroborate Defendants' failure to warn guests of the hazard, and the inoperable HVAC system in certain locations in the Hotel.

Plaintiffs also argue the identity and contact information of other guests is necessary to prepare their class certification motion. Plaintiffs feel the Protective Order [Dkt. 109] is sufficient to address any privacy interests associated with Defendants' production of guest names and contact information, and they are amenable to additional protective measures should this Court deem them necessary. Stating they are aware of, and intend to fully comply with, Colorado Rule of

Professional Conduct 7.3 (regarding solicitation of clients), Plaintiffs' counsel states they do not seek this information to solicit clients or for purposes of class notice.

Defendants argue the notion other guests have knowledge or information about facts relevant to this case is pure speculation, in part because it is unknown whether other guests were exposed to carbon monoxide or suffered any symptoms. They argue production of this information would invade the guests' "constitutionally protected privacy rights." They posit Plaintiffs' counsel will improperly use the information to identify potential new clients rather than to establish the Rule 23 factors.

## ANALYSIS

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.[2] When evaluating proportionality, courts consider: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Nothing in Rule 26(b)(1) requires the court to address all five

---

[2] Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." F.R.E. 401

proportionality factors. *See GSL Grp., Inc. v. Travelers Indem. Co.*, No. 18-CV-00746-MSK-SKC, 2020 WL 4282291, at *11 n.5 (D. Colo. July 24, 2020).

Under Rule 37(a)(1), a party may move for a court order compelling disclosure or discovery. Fed. R. Civ. P. 37(a)(1). A motion to compel may include a party's failure to produce documents requested pursuant to Rule 34. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv).

The Court construes this dispute as a motion to compel by Plaintiffs under Rule 37(a)(1) to require Defendants to produce guest names and contact information in response to Plaintiffs' Interrogatory No. 2 and Request for Production No. 6. [Dkt. 238, ¶4 (framing the issue as "[w]hether the Court should compel NIMG to respond to Raymond Clark's Interrogatory 2 and Request for Production 6.").][3]

Discovery in this matter was not bifurcated between merits and class certification discovery. [*See generally* Dkt. 210 (Scheduling Order).] This Court finds other guests who stayed at the Hotel during the same time as Plaintiffs are fact witnesses relevant to both the merits and class certification.

### 1. Merits Discovery

The Court agrees with Plaintiffs that other guests who stayed at the Hotel are relevant to their claims separately from class certification. *See Infinity Home*

---

[3] Interrogatory 2 states: "Please provide the name and CONTACT INFORMATION for the GUESTS (and include each GUEST'S respective dates of stay)." Request for Production No. 6 states: "Please produce all DOCUMENTS reflecting the name, CONTACT INFORMATION, and/or dates of stay of the GUESTS. This request includes, but is not limited to, guest folios."

*Collection v. Coleman*, No. 17-MC-00200-MSK-MEH, 2018 WL 1733262, at *3 (D. Colo. Apr. 10, 2018) (allowing discovery of certain information unrelated to class certification in part because "the court has not entirely prohibited merits discovery"); *Roberts v. C.R. England, Inc.*, No. 12–cv–0302, 2013 WL 3893987, at *3 (D. Utah July 26, 2013) (refusing to limit pre-certification discovery in part because discovery was not bifurcated); *Jones v. Nat'l Council of Young Men's Christian Ass'ns of U.S.*, No. 09 C 6437, 2011 WL 1312162, at *2 (N.D. Ill. Mar. 31, 2011) ("Since fact discovery is not bifurcated in this case, Federal Rule of Civil Procedure 26 applies to the scope of discovery here.").

An excerpted Incident Report from Boulder Fire-Rescue [Dkt. 238-1] makes evident the relevance of other guests to Plaintiffs' claims. That report indicates the fire alarm was pulled to evacuate the Hotel, and the Hotel was *fully* evacuated. First responders went "floor by floor and room by room to check for CO buildup" and discovered large amounts of carbon monoxide in the basement and in various rooms on the second through fifth floors. They ventilated the entire building, which included using fans starting on the fifth floor and moving down until all units and all floors were cleared. Once cleared and safe, guests were allowed to re-enter the Hotel.

These facts demonstrate the carbon-monoxide incident had Hotel-wide distribution and implications. Thus, any number of Hotel guests may have been

affected by, or born witness to, events relevant to Plaintiffs' individual claims.[4] Indeed, the entire Hotel was evacuated on November 18, 2018, out of concern for the pervasion of high levels of carbon monoxide throughout. Under these circumstances this Court finds guest names and contact information are relevant to Plaintiffs' individual claims. *See Infinity Home Collection*, 2018 WL 1733262, at *4 (compelling defendant to produce various discovery pre-certification because, in part, the information sought was relevant to plaintiffs' negligence and negligent failure to warn claims); *Brunner v. Holland Am. Line, Inc.*, No. C11-2118-RSM, 2013 WL 594288, at *3 (W.D. Wash. Feb. 15, 2013) (non-class-action matter compelling disclosure of cruise ship manifest of nearly 1,900 passengers because they could be direct eyewitnesses to details of plaintiff's slip and fall, including the issue of defendant's actual or constructive notice of a dangerous condition); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 n.20 (1978) ("There is a distinction in principle between requests for identification of class members that are made to enable a party to send notice and requests that are made for true discovery purposes.")

---

[4] As Plaintiff argues, guests may have information bearing on their own symptoms and carbon monoxide exposure (if any) which is relevant to Plaintiffs' exposure and spatial patterns which may help establish the cause of the CO release. Other guests may have witnessed specific events, such as Mrs. Clark passing out in the lobby, or may have heard the continuous sounding of the Clarks' personal carbon monoxide detector. Or, they may have had their own discussions with managers and maintenance involving their own symptoms or related issues; and they may corroborate Defendants' failure to warn guests of the hazard, and the inoperable HVAC system in certain locations in the Hotel.

While Defendants vaguely argue an undue burden to produce this information, the Court finds none. *See, e.g., Infinity Home Collection*, 2018 WL 1733262, at *3 ("Regarding Infinity's undue burden contention, Infinity does not specifically explain how responding to this request will be burdensome."); *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004) ("An objecting party cannot sustain [its] burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing.") And in this sense, the discovery sought is proportional to the needs of the case. The amount in controversy is significant, calculated in excess of $5 million for the Clarks alone. [Dkt. 210]. The Clarks claim a host of physical and mental impairments from their alleged carbon monoxide exposure, to include *permanent* brain injuries—thus, the issues at stake have high importance. Plaintiffs have no access to guest names or their contact information. And the likely benefit of compelling disclosure of this information outweighs any purported burden or expense on Defendants to produce it—presumably this information exists in electronic form and is easily accessible. Defendants have not argued to the contrary.

### 2. Class Certification Discovery

"Class-wide discovery related to the merits of a class action is not categorically prohibited prior to certification." *Infinity Home Collection*, 2018 WL 1733262, at *2. "[T]he recognized need for pre-certification discovery is subject to limitations which may be imposed by the court, and any such limitations are within the sound discretion of the court." *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 304-05 (D. Colo.

1998). But any pre-certification class discovery should be limited to the requirements of Rule 23. *Allen v. Mill–Tel, Inc.*, 283 F.R.D. 631, 634 (D. Kan. 2012).

For reasons similar to those stated above, the Court finds Defendants' production of the guest names and contact information to enable Plaintiffs to contact these individuals is relevant to establishing the requirements of Rule 23. Considering first-responders evacuated the entire Hotel and determined dangerous levels of carbon monoxide existed throughout, individual guests may have information about their own injuries (if any), symptoms, or exposure during their stay, which is relevant to Rule 23's commonality and typicality requirements. And while Defendants raise rightful concerns over the potential for Plaintiffs' counsel to misuse this information for improper solicitation of clients, there is no evidence before the Court to suggest these concerns have merit in this case. While there may be a fine line between proper contact with potential class members for discovery-related purposes versus improper solicitation, counsel here has indicated he "is aware of, and will strictly comply with, C.R.P.C. 7.3." The Court shall hold counsel to this representation as an officer of the Court because there are relevant discovery reasons for contacting these putative class members.

### 3. Guest Privacy Interests

The parties seem to agree there are guest privacy interests that need to be protected. Defendants' argument that the guests have a constitutional right of privacy in their names and contact information in this case, which involves no state

actors, is underdeveloped. Even so, "when valid privacy interests are at issue, it is often the case that those interests must yield to the requesting party's right to receive all information relevant to the applicable claims or defenses." *Rehberg v. City of Pueblo*, No. 10-cv-00261-LTB-KLM, 2011 WL 2180659, at *4 (D. Colo. June 2, 2011). Courts typically weigh a party's right to discovery with any privacy interests involved. *See, e.g., Pappas v. Frank Azar & Assocs., P.C.*, No. 06-cv- 01024-MSK-BNB, 2007 WL 1549037, at *4 (D. Colo. May 25, 2007) (suggesting the magistrate judge properly balanced defendant's privacy interests with plaintiff's need for the information); *Aguilar v. Aramark Corp.*, No. CIV 97-1481 JC/LFG, 1998 WL 36030448, at *1 (D.N.M. Aug. 6, 1998) ("While the federal rules provide for broad and liberal discovery, the Court is mindful of the need to balance one party's right of discovery with the opposing party's right of privacy and right to be free from an intrusive and burdensome examination into private matters.").

Doing that here, in light of the importance of the issues at stake in this case, the amount in controversy, Defendants' sole access to this information, and the importance of details potentially in these guests' possession to aid in resolving disputed issues, this Court finds the Plaintiffs' need for this relevant information outweighs any potential privacy interests surrounding the guest names and their contact information. *See Picasso Builders, LLC v. Roofing Wholesale Co.*, No. 1:20-cv-00539-GJF/JFR, 2020 WL 12739434, at *5 (D.N.M. Nov. 30, 2020) ("On balance here, Plaintiff's interest in access to this information prevails over the customer's interest

in keeping their contact information private.") The information may be produced under the current Protective Order and the Court may order additional safeguards, if warranted. *In re Bank of Am. Wage & Hour Emp. Pracs. Litig.*, 275 F.R.D. 534, 541 (D. Kan. 2011) ("Generally, concerns about confidentiality or the disclosure of private or sensitive information are not a sufficient basis to withhold discovery and are best addressed in the form of a protective order."); *Nathaniel v. Am. Airlines*, Civil No. 2007/0033, 2008 WL 5046848, at *6 (D.V.I. Nov. 20, 2008) ("Recognizing that federal law protects the release of information contained in Defendant's passenger manifest, the Court finds that Plaintiff has no other means of obtaining this information and it is discoverable under a protective order."); *Wallman v. Tower Air, Inc.*, 189 F.R.D. 566, 569 (N.D. Cal. 1999) (airline passenger list was discoverable for purposes of a possible class action though a protective order was necessary to shield passengers' privacy).

\* \* \*

For the above reasons, the guest names and contact information are relevant and proportional to the needs of this case, Plaintiffs' individual claims, and the Rule 23 factors. Plaintiffs' construed Motion to Compel is GRANTED, and the information shall be produced by Defendants subject to the Protective Order.[5]

---

[5] Within 14 days after service of a copy of this Order, any party may serve and file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a). Failure to file written objections may result in a waiver of the right to appeal the non-dispositive order. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418

The parties are ORDERED to further confer over whether any additional safeguards or procedures are necessary for the Court to impose concerning Plaintiffs' counsel's subsequent contact with those guests. FURTHER ORDERED that within 14 days of this order, the parties shall jointly contact my chambers by e-mail with a summary of the results of their conferral indicating what agreement was reached or what assistance they require of this Court, if any.

DATED: January 3, 2022

BY THE COURT:

S. Kato Crews
United States Magistrate Judge

---

F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, such as when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").